IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ADMIRAL INSURANCE COMPANY,**<br>*Plaintiff,*<br><br>v.<br><br>**SOLID WASTE SERVICES, INC. d/b/a**<br>**J.P. MASCARO & SONS et al,**<br>*Defendants.* | **Civil No. 24-3810** |

**MEMORANDUM**

COSTELLO, J.                                                    **March 10, 2026**

Admiral Insurance Company ("Admiral") seeks a declaration that it has no duty to defend

or indemnify Solid Waste Services, Inc. d/b/a J.P. Mascaro & Sons, Fox Transfer Station, Inc.,

and Great Valley Recycling, Inc. (collectively, the "Corporate Defendants") in a state court

negligence action.  In that action, Robert W. Johnson, a worker at the Great Valley Recycling

Transfer Station (the "Transfer Station"), alleges that he was injured when an inoperable garbage

truck rolled over him.  Admiral and the Corporate Defendants have filed cross-motions for

judgment on the pleadings.  For the reasons stated below, the Court will grant Admiral's motion

and deny the Corporate Defendants' motion.

I.      **BACKGROUND**

A.      **Underlying State Court Action**

Johnson's state court complaint asserts two counts of negligence, one count against Fox

Transfer Station, Inc. ("Fox Transfer") and Great Valley Recycling, Inc. ("Great Valley") and a

second count against Bergey's, Inc. ("Bergey's").[1]  *See generally*, ECF No. 1-3.  That case is

---

[1]      Solid Waste Services, Inc. is not a named defendant in the underlying action.

pending in Philadelphia County.  *See Johnson v. Fox Transfer Station Inc. et al*, 2024 No. 240303287.

Johnson alleges that workers, including himself, serviced various vehicles at the Great Valley Recycling Transfer Station.  ECF No. 1-3 ¶ 16.  Bergey's is a towing company that serves the commercial trucking industry.  *Id*. ¶ 25.  Fox Transfer and Great Valley determine how and where the vehicles are serviced at the Transfer Station.  *Id*. ¶ 22.  They also determine the procedure for how vehicles are dropped off, including whether the brakes are caged and whether the wheels are chocked.  *Id*. ¶ 23.

On May 24, 2023, Bergey's towed an inoperable garbage truck to the Transfer Station for repairs.  *Id*. ¶ 26.  Bergey's "parked and stored" the truck on a slope.  *Id*. ¶ 28.  Fox Transfer and Great Valley "failed to provide adequate instruction or guidance for the parking and storage of inoperable vehicles on-site."  *Id*. ¶ 32.  The next day, Johnson accessed the truck.  *Id*. ¶ 33. While he was on the ground near the truck, it began rolling and crushed his legs, resulting in serious injuries.  *Id*. ¶¶ 34-36, 48.

Although Johnson alleges he was not a payroll employee of any named defendant (Great Valley, Fox Transfer, or Bergey's), *id*. ¶ 14, the complaint references workers "like Mr. Johnson" four times and mentions workers generally an additional fifteen times.  *Id*. ¶¶ 16, 38, 41, 44-46, 50-54, 61-62, 64-65.

## B.   Relevant Policy Provisions

Admiral issued a Commercial General Liability Coverage Policy (the "Policy") to the Corporate Defendants.  *See generally*, ECF No. 1-4.  In part, the Policy applies to "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" during the policy period. *Id*. at 12.  If the Policy applies, Admiral has a duty to defend the insured against any "suit"

seeking damages for "bodily injury" and an obligation to pay sums the insured becomes legally obligated to pay as damages. *Id*. However, the Commercial General Liability Coverage Form (the "Coverage Form") contains multiple exclusions, some of which are modified by subsequent endorsements and exclusions. *Id*. at 12-27. The Absolute Auto Exclusion and the Workers Exclusion are at the center of this dispute.[2]

i.    The Absolute Auto Exclusion & Exclusion g.

The original auto exclusion appears in the Coverage Form at Exclusion g. titled "Aircraft, Auto, or Watercraft." This exclusion provides that the policy does not cover bodily injury related to the "ownership, maintenance, use or entrustment to others" of any auto[3] "owned or operated by or rented or loaned to any insured." *Id*. at 15.

The "Limited Coverage for Designated Unmanned Aircraft" endorsement amends the original version of Exclusion g. by describing unmanned aircraft and replacing the original Exclusion g. with a new version that includes a section for unmanned aircraft and a section for aircraft, autos, and watercraft. *Id*. at 54-55. The new version bears the same title and section— g. Aircraft, Auto or Watercraft—and it is inserted into the same location in the Policy. *Id*. at 54.

Both versions of Exclusion g. contain a Parking Exception, which provides that the exclusion does not apply if the bodily injury was the result of parking an auto on or next to

---

[2]    The Corporate Defendants also cite the Cross-Liability and Punitive Damages Exclusions. Because the Court finds the Absolute Auto and Workers Exclusions dispositive, it need not recite or discuss these additional exclusions.

[3]    Auto is defined as a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment[.]" ECF No. 1-4 at 23. The parties do not dispute that the garbage truck is an auto.

property the insured owns or rents as long as the auto "is not owned by or rented or loaned to

you[4] or the insured."  *Id*. at 15, 55.

The "Auto Exclusion (Absolute)" endorsement further modified Exclusion g. by deleting

the term "auto" from Exclusion g. and leaving it intact with respect to aircraft and watercraft.  *Id*.

at 92.  The Absolute Auto Exclusion also adds a standalone bar that provides as follows:

> This insurance does not apply to "bodily injury" . . . allegedly or actually arising
> out of, related to, caused by, contributed to by, or in any way connected to or with:
>
> 1.  The ownership, maintenance, "use", or entrustment to others, by or on
>     behalf of any insured of an "auto."
>
> 2.  The direct or indirect arranging or brokering by or on behalf of any
>     insured for the ownership, maintenance, "use" or entrustment to others
>     of any "auto."
>
> . . .
>
> This exclusion applies even if the claims against any insured . . . allege negligence
> or any other wrongdoing in the supervision, hiring, retention, employment,
> training, or monitoring of others.
>
> Direct or indirect arranging or brokering by or on behalf of any insured includes,
> but is not limited to "bodily injury", . . . arising out of, related to, caused by,
> contributed to by, or in any way connected to or with the ownership, maintenance,
> "use" or entrustment to others of any "auto" by another for which any insured is
> alleged to be liable under any theory of law, including but not limited to joint
> venture, respondeat superior, conspiracy, partnership or joint enterprise.

> *Id*.

### ii.    The Workers Exclusion & Exclusion e.

Exclusion e. in the Coverage Form, titled "Employer's Liability," bars coverage for

bodily injury sustained by an insured's employee in the course of employment while the

employee was performing work-related duties.  *Id*. at 13.

---

[4]    Throughout the Policy, "you" or "your" refers to the Named Insureds and any other
person or organization qualifying as a Named Insured.  ECF No. 1-4 at 12.

A subsequent endorsement titled "Injury to Workers Exclusion – Joint Form" (the "Workers Exclusion") contains a series of exclusions that collectively bar coverage for various types of workers.  Specifically, it contains the "Injury to Contractor Exclusion," the "Injury to Temporary, Volunteer, or Casual Worker Exclusion," and the "Absolute Employers Liability Exclusion."  *Id*. at 85-86.

Under the Injury to Contractor Exclusion, the Policy does not apply to bodily injury to "[a]ny 'contractor'" or "[a]ny 'employee' of any 'contractor.'"  The term "contractor" means any independent contractor, subcontractor, subsubcontractor or service provider "[h]ired by you [or others] to perform work, operations or services for you or on your behalf."  *Id*. at 85.  The term "employee" includes ". . . a leased worker, temporary worker, volunteer worker, borrowed worker, borrowed servant, casual laborer, apprentice, intern or any other person performing work, operations or services for any 'contractor.'"  *Id*.

The Policy's Injury to Temporary, Volunteer, or Casual Worker Exclusion, precludes coverage for bodily injury to any temporary, volunteer, or casual worker.  A temporary worker is "[a] person furnished to any insured to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions[.]"  *Id*. at 86.  A volunteer worker is "a person who is not your 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you."  *Id*. at 26.  A casual worker includes a person "who acts at the direction of and within the scope of duties determined by any insured, and is employed by any insured for a short time and for a limited and temporary purpose[,]" or a person "for whom any insured . . . does not withhold federal income taxes and pay federal unemployment tax."  *Id*. at 86.

The Absolute Employers Liability Exclusion deletes the original Exclusion e. in the Coverage Form and replaces it with a new, absolute version. *Id.* The Absolute Employers Exclusion provides that the Policy does not cover bodily injury to any employee of any insured arising out of and in the course of "[e]mployment by any insured" or "[p]erforming duties related to the conduct of any insured's business. *Id.*

## II.    LEGAL STANDARD

### A.    Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" FED. R. CIV. P. 12(c). A court will grant the motion if the movant shows that "there are no issues of material fact, and that he is entitled to judgment as a matter of law." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) (citation omitted). The Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In deciding a motion for judgment on the pleadings, the Court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents attached to the motion—provided the claims are based on these documents." *State Farm Fire v. Rockinmusik LLC*, No. 22-4243, 2023 WL 3005009, at *6 (E.D. Pa. Apr. 19, 2023) (citation and quotations omitted).

## III.    DISCUSSION

The parties' cross-motions focus on the interpretation and applicability of certain endorsements and exclusions. In particular, the parties dispute whether the Absolute Auto Exclusion or the Unmanned Aircraft Endorsement governs the auto-related allegations in the

underlying complaint.  Additionally, they dispute whether Johnson falls within the scope of the Workers Exclusion.  If either applies, Admiral has no duty to defend or indemnify any insured. *See* ECF No. 1-4 at 85-86, 92.

Under Pennsylvania law, an insurance policy is a contract between the insurer and policyholder.  *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020).  Interpretation of an insurance policy is a question of law for the court.  *Sikirica*, 416 F.3d at 220.  In interpreting the policy, the court must "effectuate the intent of the contracting parties as reflected by the written language of the insurance policies."  *Kurach*, 235 A.3d at 1116.  Unambiguous terms are given their plain and ordinary meaning, unless they violate clearly established public policy.  *Id*. Ambiguous terms, those subject to more than one reasonable interpretation under a particular set of facts, must be construed in favor of the policyholder.  *Id*.  "[I]f possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions."  *Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 574 (3d Cir. 2024) (citation omitted).

Under the four corners rule, the court determines an insurer's duty "solely by the allegations of the complaint in the [underlying] action."  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)).  In a declaratory judgment action, the court compares the scope of the policy's coverage to the allegations in the underlying complaint to determine if it triggers coverage.  *Ramara*, 814 F.3d at 674; *see also Gen. Accident. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).  The facts in the underlying complaint are taken as true and liberally construed in favor of the insured.  *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).  An insurer has a duty to defend if there is "any possibility" that the factual allegations in the underlying complaint trigger coverage.  *Ramara*, 814 F.3d at 674 (citing

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc*., 2 A.3d 526, 541 (Pa. 2010)). If the underlying complaint triggers a duty to defend, the insurer must defend "until such time that the claim is confined to a recovery that the policy does not cover." *Allen*, 692 A.2d at 1095.

The insured bears the initial burden to show that its claims are "within the policy's affirmative grant of coverage." *Sciolla v. W. Bend Mut. Ins. Co*., 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) (quoting *Koppers Co. v. Aetna Cas. & Sur. Co*., 98 F.3d 1440, 1446 (3d Cir. 1996)). The insurer bears the burden of proving that a policy exclusion or limitation applies. *Sciolla*, 987 F. Supp. 3d at 599. Exclusions are strictly construed against the insurer and in favor of the insured. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 207 (3d Cir. 2001).

Finally, although the duty to defend is separate from and broader than the duty to indemnify, both duties depend on the underlying allegations. *Allen*, 692 A.2d at 1095. Because the duty to defend is broader, a finding that the insurer has no duty to defend will necessitate a finding that it also has no duty to indemnify. *See Kvaerner*, 908 A.2d at 896 n.7.

### A. The Absolute Auto Exclusion

Admiral argues the Absolute Auto Exclusion is a complete bar to coverage. The Corporate Defendants respond that the Unmanned Aircraft Endorsement effectively superseded the Absolute Auto Exclusion by replacing Exclusion g. in its entirety and reinstating the Parking Exception in Exclusion g. While the parties do not dispute that Johnson sustained bodily injury involving an auto, they disagree on which auto exclusion controls and whether the Parking Exception is still valid.

### i. The Operative Auto Exclusion & Status of the Parking Exception

The Parking Exception contained in Exclusion g. states that the exclusion does not apply to parking an auto on or next to property the insured owns or rents as long as the auto "is not

8

owned by or rented or loaned to you or the insured." ECF No. 1-4 at 15, g.(3). For this exception to apply, the auto cannot be owned, rented, or borrowed by the insured. However, the Absolute Auto Exclusion deleted the term "auto" from Exclusion g. *Id*. at 92. Meaning, the Parking Exception no longer applied to autos and remained in effect only to the extent that it applied to parking aircraft or watercraft. The standalone provision in the Absolute Auto Exclusion does not contain a parking exception. *Id*.

Despite this, the Corporate Defendants contend that the Unmanned Aircraft Endorsement reinstates the Parking Exception for autos. This argument is unpersuasive. The underlying case does not involve an unmanned aircraft, rendering the Unmanned Aircraft Endorsement seemingly irrelevant. But even if it applies, it merely replaced one version of Exclusion g. with another. While Exclusion g. in the Unmanned Aircraft Endorsement adds a section on unmanned aircraft, it, too, bears the same name and is Exclusion g. under Section I, Coverage A. ECF No. 1-4 at 54. The Absolute Auto Exclusion deletes "auto" throughout Section I, Coverage A, Exclusion g., regardless of which version of Exclusion g. is in effect. By removing the word "auto" from Exclusion g., the Absolute Auto Exclusion effectively nullifies any auto-related exceptions, including the Parking Exception. Once "auto" is deleted from Exclusion g., the standalone exclusion in the Absolute Auto Exclusion becomes the controlling provision for auto-related incidents. That provision does not contain its own parking exception, and it deletes any parking exception related to autos in Exclusion g. Accordingly, there is no parking exception.[5]

---

[5] The Corporate Defendants rely on the Fifth Circuit's decision in *Penn-America Ins. Co. v. Tarango Trucking LLC*, 30 F.4th 440 (5th Cir. 2022), to argue that the underlying incident involved "parking." Unlike the policy at issue in *Tarango*, however, the Absolute Auto Exclusion in this case does not contain a parking exception. Accordingly, the Court need not determine whether an accident involving an inoperable truck delivered for repairs a day prior involves "parking."

ii. Alleged Ambiguity Between the Unmanned Aircraft Endorsement and the
Absolute Auto Exclusion

The Corporate Defendants further suggest that even if the Absolute Auto Exclusion applies, there is a conflict between that provision and the Unmanned Aircraft Endorsement such that the policy is ambiguous. They contend that the Court must therefore apply the endorsements in a way that favors coverage. There is no such conflict or ambiguity.

A policy is ambiguous if it is reasonably susceptible to more than one meaning. "A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981).

There is no conflict between the Unmanned Aircraft Endorsement and the Absolute Auto Exclusion here. Rather, they operate in a logical hierarchy. Assuming the Unmanned Aircraft Endorsement applies, it merely replaces the text of Exclusion g. with a version that addresses unmanned aircraft. The new version is still located at Exclusion g. The Absolute Auto Exclusion then deletes the term "auto" from Exclusion g. and adds a standalone exclusion. The provisions do not conflict, and there is no ambiguity for the Court to resolve. The Court declines to create an ambiguity merely because the Policy requires careful reading to figure out how multiple endorsements interact. *See Viger v. Com. Ins. Co. of Newark, N.J.*, 707 F.2d 769, 774 (3d Cir. 1983) (rejecting the argument that a policy is ambiguous because it required an insured to refer to "several different places" to find applicable exclusions and definitions, as a policy "is not rendered ambiguous simply because it requires the insured to read it thoroughly and carefully").

Finally, even if the version of Exclusion g. in the Unmanned Aircraft Endorsement fully replaced the original Exclusion g., the Absolute Auto Exclusion remains the controlling

10

provision.  Appearing on page 92, the Absolute Auto Exclusion is the later endorsement, making it the parties' final say on auto-related coverage.

### iii.  Application of the Absolute Auto Exclusion

Having determined that the Absolute Auto Exclusion controls and does not conflict with the Unmanned Aircraft Endorsement, the question becomes whether it applies based on the allegations in the underlying complaint.

The Absolute Auto Exclusion is broad.  It bars coverage for bodily injury related to the ownership, maintenance, use, or entrustment to others of an auto, provided the actions are taken by or on behalf of any insured.  ECF No. 1-4 at 92.  It also bars coverage for bodily injury related to the "direct or indirect arranging or brokering" by or on behalf of any insured for the ownership, maintenance, use or entrustment to others of any auto.  *Id*.

Based on the allegations in the underlying complaint, the Absolute Auto Exclusion applies to this case and Admiral has no duty to defend.  Johnson's underlying complaint alleges that workers, like him, serviced vehicles at the Transfer Station.  ECF No. 1-3 ¶ 16.  Insured defendants—Fox Transfer and Great Valley Recycling—determined how and where the vehicles were serviced at the Transfer Station.  *Id*. ¶ 22.  They further controlled the procedure for dropping off vehicles.  *Id*. ¶ 23.  Bergey's is a towing company that dropped off the inoperable garbage truck at the Transfer Station.  *Id*. ¶¶ 25-26.  Johnson accessed the garbage truck, and he suffered bodily injury when it rolled over his legs.  *Id*. ¶¶ 33, 36, 48.  By controlling how and where vehicles are serviced and dropped off, an insured defendant, at minimum, directly or indirectly arranged for the maintenance of the garbage truck at the Transfer Station.  As a result, the factual allegations in the underlying complaint fall squarely within the Absolute Auto Exclusion.

11

### B.    The Workers Exclusion

Admiral next argues the Workers Exclusion applies to bar coverage because Johnson was an insured's worker.  In response, the Corporate Defendants emphasize that the underlying complaint does not allege who employed Johnson and suggest that the Court should therefore find that the Workers Exclusion does not apply.  The Court finds that Johnson was a worker, as he repeatedly alleges, such that the Workers Exclusion applies.

Exclusion e. of the Coverage Form states that the policy does not cover bodily injury to an "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business.  ECF No. 1-4 at 13.  The Policy definitions explain that "employee" includes a leased worker, but it does not include a temporary worker.  *Id*. at 24.

A subsequent endorsement, the "Injury to Workers Exclusion – Joint Form," excludes coverage for injuries to contractors, leased workers, and temporary, volunteer or casual workers. *Id*. at 85-86.  This endorsement also contains an "Absolute Employers Liability Exclusion" that deletes and replaces the original Exclusion e.  Read together, these exclusions preclude coverage for injuries to any worker, including those hired by others.  In essence, if the injured party was at the location to do work, the exclusion applies.

Here, the underlying complaint alleges that Johnson was a worker and serviced vehicles at the Transfer Station.  ECF No. 1-3 ¶¶ 16, 54, 65.  However, as the Corporate Defendants emphasize, the underlying complaint does not allege who employed Johnson.  Rather, it alleges that he "was not a payroll employee of any named defendant[.]"  *Id*. ¶ 14.

But in determining the duty to defend, the Court considers the allegations in the underlying complaint and determines whether they present a claim that is possibly covered by

the policy.  It does not speculate or imagine missing information that—if included—might place

the claim within the policy.  Here, the underlying complaint alleges that workers, like Johnson,

serviced vehicles at the Transfer Station.  *Id*. ¶ 16.  It further refers to workers nineteen times,

including four specific references to workers, like Johnson.  ECF No. 1-3 ¶¶ 16, 38, 41, 44-46,

50-54, 61-62, 64-65.  Based on facts alleged, there is no possibility that workers who serviced

vehicles at the Transfer Station, like Johnson, do not fall into any of the categories in the Workers

Exclusion.  The Workers Exclusion therefore applies, and Admiral has no duty to defend.

## IV.     CONCLUSION

Based on the allegations in the underlying complaint, the Absolute Auto Exclusion

applies because an insured arranged for the maintenance of the garbage truck at the Transfer

Station.  Additionally, the Workers Exclusion bars coverage because Johnson alleges that

workers, like him, serviced vehicles at the Transfer Station, and he was injured when he accessed

the truck.  As a result, Admiral has no duty to defend, and it therefore cannot have a duty to

indemnify as a matter of law.[6]  *See Ramara*, 814 F.3d at 673.

An appropriate Order follows.

**BY THE COURT:**

_____

MARY KAY COSTELLO, J.

---

[6]     The Corporate Defendants argue that a determination on the duty to indemnify is premature without a finding of liability.  While there is generally no duty to indemnify until there has been a finding of liability, if there is no duty to defend, there cannot be a duty to indemnify as a matter of law.  *Sikirica*, 416 F.3d at 225 ("Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend.").  Because Admiral has no duty to defend, it necessarily follows that it has no duty to indemnify. Accordingly, the Court may resolve the indemnity issue at this stage as a matter of law.